# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| FIRST-CITIZENS BANK & TRUST COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 15-cv-09661 |
| v. | ) ) | Judge Andrea R. Wood |
| TRICOR GROUP LLC, et al., | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The plaintiff in this case, First-Citizens Bank & Trust ("First-Citizens"), claims to be the successor in interest to Temecula Valley Bank ("Temecula") with respect to a certain note (the "Note") and security agreements relating to a business loan that Temecula made to Defendant Tricor Group LLC ("Tricor"). First-Citizens has brought this lawsuit to foreclose on one of the security agreements and to obtain money judgments from Tricor and the individuals who guaranteed Tricor's debt under the Note. Before the Court is a motion to dismiss the complaint brought by Tricor and the individual guarantors pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 18.) For the reasons stated below, the motion is denied.

## BACKGROUND

For the purposes of deciding this motion, the Court accepts the well-pleaded facts in the complaint as true and construes the allegations in the light most favorable to the plaintiff. *See Thulin v. Shopko Stores Operating Co., LLC*, 771 F.3d 994, 997 (7th Cir. 2014).

On January 6, 2006, Tricor borrowed $645,000 from Temecula. (Compl. ¶ 5, Dkt. No. 1.) In connection with that loan, Temecula and Tricor entered into a Business Loan Agreement, which sets forth the representations, warranties, and agreements governing the loan. (*Id.* ¶ 7 & Ex.

2.) To protect Temecula against potential default and secure the loan, Tricor mortgaged to Temecula certain real property located at 840 Rollins Road in Lake Heights, Illinois. (*Id.* ¶ 8.) In addition, Tricor and Defendant KVS Petroleum Inc. ("KVS") entered into a Commercial Security Agreement with Temecula, which granted Temecula a security interest in certain personal property. (*Id.* ¶¶ 9, 10.) And finally, Defendants Johny Vadukumcherry and Emmanuel Kurian, who were Managing Members of Tricor, each agreed to guarantee unconditionally all debt owed pursuant to the loan. (*Id.* ¶ 14 & Ex. 2.)

About three-and-a-half years after the loan was executed, on July 17, 2009, the California Department of Financial Institutions closed Temecula and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. (*Id.* Group Ex. 8.) Immediately thereafter, First-Citizens purchased most of Temecula's assets from the FDIC and assumed most of Temecula's liabilities. (*Id.*) Pursuant to this purchase agreement, the FDIC filed a financing statement with the Illinois Secretary of State, perfecting First-Citizens's security interest in the personal property. (*Id.* ¶¶ 11, 12.) Then, on May 6, 2010, the FDIC validly assigned the Note and its rights under the related collateral agreements to First-Citizens. (*Id.* ¶ 16.) Tricor failed to make the required monthly payments on its loan and it is now in default. (*Id.* ¶ 17 & Ex. 9.) As a result, the entire indebtedness is immediately due and payable. (*Id.* ¶ 18.) First-Citizens sent a letter to Tricor on September 28, 2015 demanding immediate payment of all money due on the loan. (*Id.* ¶ 19.)

Shortly thereafter, First-Citizens filed this lawsuit against Defendants seeking to foreclose on the Commercial Security Agreement. In addition to seeking to foreclose on its interest in the personal property subject to the agreement (Count I), First-Citizens also asserts claims for breach of the Note (Count II), breach of the Business Loan Agreement (Count III), and breach of the unconditional guarantees (Count IV). Now before the Court is a motion to dismiss the complaint

filed by Defendants Tricor, Vadukumcherry, and Kurian pursuant to Federal Rule of Civil Procedure 12(b)(6). In their motion, Defendants argue, first, that First-Citizens's complaint fails to comply with the requirements of the Illinois Mortgage Foreclosure Law ("IMFL"), 735 ILCS 5/15-1504(a); and second, that First-Citizens lacks standing to foreclose on the security interest because it is not the legal holder of the Note. Both arguments fail for reasons that follow.

## DISCUSSION

In exercising its diversity jurisdiction, this Court applies the substantive law of Illinois to determine the elements that First-Citizens must prove to establish its claims. *See Sabratek Liquidating LLC v. KPMG LLP*, No. 01 C 9582, 2002 WL 774185, at *2 (N.D. Ill. Apr. 26, 2002) (citing *Charter Oak Fire Ins. Co. v. Hedeen*, 280 F.3d 730, 735 (7th Cir. 2002)). To determine the sufficiency of First-Citizens's complaint, however, the Court looks to federal pleading standards. *See id.*

Federal Rule of Civil Procedure 8(a) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a Rule 12(b)(6) motion to dismiss, the short and plain statement must meet two threshold requirements. First, the complaint's factual allegations must be sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). While a complaint need not contain detailed factual allegations, there "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at

555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Moreover, the Court is not bound to accept as true legal conclusions couched as factual allegations. *See id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

I. **First-Citizens's Compliance with the Illinois Mortgage Foreclosure Law**

Defendants contend that First-Citizens's complaint is deficient under the IMFL for two reasons. First, Defendants argue that First-Citizens failed to attach a copy of the mortgage to the complaint as required by the statute. Second, Defendants assert that First-Citizens improperly has declined to seek to foreclose on the mortgage as part of this case and instead purports to reserve the right to foreclose on the mortgage at some later date and in a separate proceeding. In response, First-Citizens argues that, since it is not foreclosing on a mortgage, it is not bound by the requirements of the IMFL.[1]

Under Section 15-1504(a) of the IMFL, a party seeking foreclosure must attach a copy of the mortgage to its complaint. *See* 735 ILCS 5/15-1504. However, the language of the statute indicates that it is specifically intended to cover mortgage foreclosures. Indeed, the first subpart of Section 15-1504(a) explains that the form of filing described in that section may be used when a plaintiff files a complaint "to foreclose the ***mortgage*** (or other conveyance in the nature of a

---

[1] In their reply, Defendants do not respond to First-Citizens's arguments regarding the IMFL. Such a failure to respond suggests that Defendants have waived their own IMFL arguments. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver."). Nonetheless, the Court will proceed to address those arguments on the merits.

4

*mortgage*)." *Id.* (emphasis added). That Section 15-1504 applies to mortgage foreclosures in particular is reinforced by Section 15-1106 of the IMFL, which outlines the applicability of the Article. According to that section, a secured party "may *at its election* enforce its security interest in a foreclosure under" the IMFL. 735 ILCS 5/15-1106(b) (emphasis added). A secured party can make this election by "filing a complaint stating that it is brought under this Article, in which event the provisions of this Article shall be exclusive in such foreclosure." *Id.* Furthermore, the only security interests enforceable under the IMFL are collateral assignments of beneficial interests in land trusts and assignments for security of a buyer's interest in a real estate installment contract. *Id*.

First-Citizens is not attempting to foreclose on a mortgage at this time, but instead seeks only to foreclose on its security interest in personal property. In pursuit of this foreclosure, First-Citizens filed a complaint. Nowhere in that complaint does First-Citizens invoke the protections of the IMFL. Even if First-Citizens had sought to foreclose under the IMFL, its security interest would not be covered by that statute since it was not created by either a collateral assignment or an assignment of interest in a real estate installment contract. Thus, for a variety of reasons, First-Citizens's complaint is not inadequate for failure to attach a copy of the mortgage.

First-Citizens's complaint also is not deficient for reserving the right to foreclose on the mortgage at a later date. Nowhere in the Illinois law cited by Defendants does it state that a plaintiff must foreclose on a security interest and a mortgage associated with a defaulted debt simultaneously. To the contrary, the Uniform Commercial Code ("UCC"), as adopted by Illinois, states that after default, a secured party "may reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by *any* available judicial procedure." 810 ILCS 5/9-601(a)(1) (emphasis added). Thus, under the UCC, First-Citizens has several options by

which it may pursue a remedy. Indeed, the statute goes on to state that these enforcement rights "are cumulative and *may* be exercised simultaneously." *Id.* at 601(c) (emphasis added). The use of the word "may" indicates that a plaintiff is not required to pursue all of its remedies simultaneously but instead is given the option of simultaneous foreclosure. Here, First-Citizens has chosen to foreclose on its security interest in the personal property now and to foreclose on the mortgage at some later time if at all. This decision does not conflict with either the UCC or Illinois law. Since neither the failure to attach the mortgage nor the reservation of the right to foreclose on the mortgage conflicts with the IMFL, the Court declines to dismiss First-Citizens's complaint on these bases.

## II. First-Citizens's Standing to Enforce the Note

Defendants also challenge First-Citizens's standing to foreclose on the Commercial Security Agreement, arguing that the assignment of the Note is defective. Specifically, Defendants contend that the Note was never endorsed to First-Citizens and thus never properly transferred.

To have standing, "a litigant must prove that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691–92 (7th Cir. 2015) (internal quotation marks omitted). Courts have generally recognized both constitutional and prudential standing limits. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 540 (7th Cir. 2012). Prudential standing limitations prohibit litigants "from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Warth v. Seldin*, 422 U.S. 490, 509 (1975).

Defendants challenge First-Citizens's status as the real party in interest for purposes of this foreclosure action. In particular, Defendants contest the validity of the assignment of the Note to First-Citizens, contending that First-Citizens is not the proper party to enforce the Note and therefore lacks prudential standing to sue. Although not expressly labeled as such, this argument presents a factual challenge to the Court's jurisdiction—*i.e.*, that the facts regarding the endorsement of the Note belie First-Citizens's allegation in the complaint that the Note was properly assigned. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) ("A factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient.") (quoting *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009)) (emphasis in original).

In raising such a factual challenge, the defendant bears the initial burden of proffering evidence to call the plaintiff's standing into question. *See Apex*, 572 F.3d at 444 (explaining that once the defendant has produced evidence calling the plaintiff's standing into question, "[t]he presumption of correctness that we accord to a complaint's allegations falls away"); *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15-CV-5182, 2016 WL 4179150, at *4 (N.D. Ill. Aug. 8, 2016) ("[Defendant] argues that no presumptive truthfulness attaches to these allegations because it has made a 'factual challenge' to standing. [Defendant] ignores, however, that *it*—not [Plaintiff]—bears the initial burden of proffering 'evidence' to call [Plaintiff's] standing into question."); *Inverom Corp. v. Digitek S.p.A.*, No. 09-CV-3613, 2011 WL 1231307, at *1 (N.D. Ill. Mar. 29, 2011) ("[D]efendants have come forward with nothing which undermines the allegations of the complaint. Accordingly, at this point in the litigation, the court cannot treat this as a factual challenge to subject matter jurisdiction; instead, the court must assume the allegations of the complaint are true.").

The complaint in this case alleges that the FDIC assigned the Note and its attendant security documents to First-Citizens. Defendants contend, however, that the assignment documents on which First-Citizens relies are insufficient actually to transfer the Note under Illinois law. Specifically, Defendants point to the Note itself and the fact that it was never properly endorsed to anyone. While there is a stamp and a signature on the Note, Defendants argue that this does not transfer ownership to any entity because it does not identify the transferor or the person to whom the Note is payable. Furthermore, the stamp is dated January 20, 2006, approximately four years before First-Citizens acquired the interest. Defendants argue that, even if the signature constituted a valid assignment, the Note would have been assigned to an unidentified third-party. In essence, according to Defendants, the Note either still belongs to Temecula or was transferred to an unidentified third-party in 2006.

In challenging the FDIC's assignment of the Note to First-Citizens, Defendants have failed to identify any evidence supporting their argument that First-Citizens lacks standing to sue. At most, Defendants point to a signature on the Note dated January 20, 2006 as evidence that another entity might be the rightful holder of the Note. But Defendants neither submit an affidavit nor identify any other evidence in support of this argument. Absent any evidence of a factual dispute, the Court need not demand proof of jurisdiction from First-Citizens. Instead, the Court accepts the complaint's allegations regarding standing as true.

First-Citizens has alleged that the FDIC, as receiver, validly assigned the Note to First-Citizens through a purchase and assumption process. The FDIC was established to insure the deposits of all banks and savings associations. *See* 12 U.S.C. § 1811(a). When an institution becomes insolvent, the FDIC is regularly appointed receiver and assumes responsibility for managing and protecting the failed bank's assets on behalf of its creditors and shareholders. *See*

12 U.S.C. § 1821(c)(5). As receiver, the FDIC succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A). After appointment, the FDIC in its receivership capacity has two options: liquidation of assets or a purchase and assumption transaction. *See, e.g.*, *Farnik v. FDIC*, 707 F.3d 717, 724 (7th Cir. 2013); *FDIC v. Bierman*, 2 F.3d 1424, 1438 (7th Cir. 1993). In a purchase and assumption transaction, the FDIC as receiver arranges for a financially stable bank to purchase the failed bank and reopen it without interrupting banking operations. *See* 12 U.S.C. § 1823(c)(4)(E)(iii).

As alleged in the complaint, after the FDIC was appointed receiver of Temecula, it engaged in a purchase and assumption transaction with First-Citizens. As part of this process, the FDIC assigned Temecula's Note and Security Instruments relating to the Tricor loan to First-Citizens. Under Illinois law, assignments must meet the same requirements as other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration. *See Nw. Diversified, Inc. v. Desai*, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004). However, "no particular form of assignment is required; any document which sufficiently evidences the intent of the assignor to vest ownership of the subject matter of the assignment in the assignee is sufficient to effect an assignment." *Cincinnati Ins. Co. v. Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 230 (Ill. App. Ct. 2008). If a valid assignment occurs, "the assignee acquires all of the interest of the assignor in the property that is transferred." *Buck v. Ill. Nat. Bank & Trust Co.*, 223 N.E.2d 167, 169 (Ill. App. Ct. 1967).

Here, since Defendants have failed to proffer any evidence to the contrary, the allegations in the complaint are sufficient to show a valid assignment of the Note. Additionally, the

9

"Assignment of Note and Security Instruments" document states that the FDIC "hereby grants, sells, assigns, transfers, and conveys to Assignee, its successors and assigns, all of the Assignor's right, title and interest, both legal and equitable, in, to, and under" the Note and the Security Instruments. (Compl. Group Ex. 8, Dkt. No. 1.) The document also states that those assets were "purchased" by First-Citizens. (*Id.*) The assignment is further signed by the FDIC's attorney. (*Id.*) These factors demonstrate the FDIC's intent to assign the Note and Security Instruments to First-Citizens for consideration. First-Citizens's complaint and supporting loan documents are sufficient to state a claim to foreclose on the Commercial Security Agreement. Consequently, the Court denies Defendants's motion to dismiss for lack of standing.[2]

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 18) is denied.

ENTERED:

Dated: March 30, 2017

_____
Andrea R. Wood
United States District Judge

---

[2] In their response to Defendants' motion to dismiss, First-Citizens also argues that the FDIC was a holder in due course, and that such holder in due course status extended to First-Citizens as the subsequent holder of the Note. Many circuits have vested the FDIC with holder in due course status. *See, e.g., FDIC v. Wood*, 758 F.2d 156, 161 (6th Cir. 1985) ("[W]e hold that when the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course."). And several circuits have extended this holder in due course status to subsequent note holders. *See, e.g., Campbell Leasing, Inc. v. FDIC*, 901 F.2d 1244, 1249 (5th Cir. 1990) ("[T]he FDIC and subsequent note holders enjoy holder in due course status whether or not they satisfy the technical requirements of state law."). The Seventh Circuit, however, has neither accepted nor rejected conferral of holder in due course status to the FDIC. *See, e.g., FDIC v. Lauterbach*, 626 F.2d 1327, 1330 n.6 (7th Cir. 1980) (noting that the Seventh Circuit has yet not addressed whether 12 U.S.C. § 1823(e) affords the FDIC holder-in-due-course status on a negotiable instrument.). This Court declines to reach the issue of whether the FDIC or First-Citizens is a holder in due course since it is unnecessary to do so for purposes of resolving the motion to dismiss.